

**ORDERED in the Southern District of Florida on May 10, 2019.**

Erik P. Kimball, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                              Case No.:18-23071-EPK
                                                    CHAPTER 11
**ALLIANCE BIOENERGY PLUS, INC.**,

    Debtor.
_____/

**ALLIANCE BIOENERGY PLUS, INC.**,

    Plaintiff,

v.                                                  Adv. Proc. No.:18-1451-EPK

**DENNIS LENABURG**,

    Defendant.
_____/

## ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In this Order, the Court rules on two substantively identical motions for partial summary judgment, as follows: (1) *Plaintiff's Motion for Partial Summary Judgment* [ECF No. 12; Adv. Proc. No. 18-01451], filed by Alliance BioEnergy Plus, Inc., the debtor in this chapter 11 case and the plaintiff in the above-captioned adversary proceeding (the "Debtor"); and (2) *Debtor's Motion for Partial Summary*

*Judgment on Objection to Claim No. 7 Filed by Dennis Lenaburg* [ECF No. 80, Case No. 18-23071], also filed by the Debtor. In these motions, the Debtor argues that two components of a multi-part proof of claim filed by Dennis Lenaburg should be capped pursuant to 11 U.S.C. § 502(b)(7).

As set out more fully below, the Court agrees that Mr. Lenaburg's claims for future base pay and future discretionary annual bonuses are capped under the statute, and so the motions will be granted. The Court will consider the remainder of the disputes presented in the above-captioned adversary proceeding and the related objection to Mr. Lenaburg's proof of claim at trial.

The parties fully briefed these matters with the following filings:  (1) *Joint Stipulation of Facts on Plaintiff's Motion for Partial Summary Judgment* [ECF No. 26, Adv. Proc. No. 18-01451]; (2) *Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment* [ECF No. 27, Adv. Proc. No. 18-01451]; (3) *Plaintiff's Reply Memorandum in Support of Motion for Partial Summary Judgment* [ECF No. 29, Adv. Proc. No. 18-01451]; (4) *Debtor's Objection to Claim No. 7 Filed by Dennis Lenaburg* [ECF No. 79, Case No. 18-23071]; (5) *Creditor's Response in Opposition to Debtor's Motion for Partial Summary Judgment* [ECF No. 87, Case No. 18-23071]; and (6) *Debtor's Reply Memorandum in Support of Motion for Partial Summary Judgment* [ECF No. 90, Case No. 18-23071].

## FACTS

The Debtor and Mr. Lenaburg entered into a written Employment Agreement under which Mr. Lenaburg agreed to act as corporate controller of the Debtor for a period of 4 years ending on April 24, 2018. That original Employment Agreement provided for several kinds of compensation. The Debtor agreed to pay Mr. Lenaburg base salary of $110,000, $150,000, $200,000, and $250,000 for each of the 4 years under the contract. The Debtor agreed that Mr. Lenaburg would be eligible for a discretionary annual bonus and would also receive a conditional quarterly bonus. The Debtor could pay the discretionary annual bonus in cash or equity or both as determined by its compensation committee. In addition, the Debtor agreed to provide Mr. Lenaburg with 1,000,000 stock options in

2

three equal portions vesting annually at or about the end of each of his first three years of employment. The Debtor's compensation committee could augment this award.

Section 3.2 of the Employment Agreement covers bonus compensation. Subsection (b) provides for a quarterly bonus of no less than $5,000 conditioned on the Debtor being current in its quarterly and annual reports to the Securities and Exchange Commission ("SEC"). Subsection (a) states, in relevant part, as follows: "During the Employment Term, Employee shall be eligible for discretionary target incentive compensation between 20% and 70% of Base Salary, for each calendar year during the Employment Term, based on a mutually agreed to plan approved by the Compensation Committee."

In May 2017, the Debtor and Mr. Lenaburg entered into a written Employment Agreement Extension. In the above-captioned adversary proceeding, and in the objection to claim, the Debtor argues that the Employment Agreement Extension is not valid or enforceable. However, for purposes of these motions only, the parties agreed to treat it as an enforceable contract. Under the Employment Agreement Extension, the parties agreed to extend Mr. Lenaburg's contract for 5 years. Mr. Lenaburg was to receive a base salary of $250,000 per year with annual increases of no less than 10% per year[1], plus 5,000,000 stock options vesting at 1,000,000 options per year for each year of the extended term. The quarterly bonus provided in Section 3.2(b) of the original Employment Agreement was deleted. The remainder of the Employment Agreement terms were not changed.

In addition to the stock options specifically awarded under the Employment Agreement and the Employment Agreement Extension, the Debtor awarded Mr. Lenaburg a number of warrants in lieu of cash for the discretionary annual bonus and, in one instance, in lieu of unpaid base pay.

---

[1] In this regard, the Employment Agreement Extension uses the word "may" but the parties' joint stipulation reads as though the base salary increases were guaranteed.

3

The Debtor terminated Mr. Lenaburg's employment, effective June 15, 2018, by correspondence sent on June 28, 2018 and July 3, 2018. The Debtor represented the termination as for cause. Mr. Lenaburg disputes that there was cause for his termination. In connection with his termination, the Debtor cancelled all of Mr. Lenaburg's unexercised stock options.

Immediately after his termination, Mr. Lenaburg filed suit against the Debtor in a Florida state court, seeking damages for all amounts due under the employment contract as extended, including future base salary and bonus awards. That suit was stayed by the filing of this bankruptcy case. The same claims are included in Mr. Lenaburg's proof of claim number 7 (as amended) and his counterclaim in the above-captioned adversary proceeding [ECF No. 11, Adv. Proc. No. 18-01451].

## MR. LENABURG'S PROOF OF CLAIM

Mr. Lenaburg filed a timely proof of claim, presenting an unsecured claim in the original aggregate amount of $161,980,544. Claim No. 7-1, Case No. 18-32071. That claim has 5 components as follows:

(1) $1,469,693 for base pay for the period from June 15, 2018 through the expiration of the Employment Agreement Extension on April 24, 2023 ("Future Base Pay");

(2) $16,667 for unpaid base pay ("Back Pay");

(3) $26,795 for deferred compensation ("Deferred Compensation");

(4) $1,139,619 for discretionary annual bonuses in years following termination ("Future Bonuses"); and

(5) $159,327,770 for "15,932,777 Stock Warrants at $10 per share (value estimated by Daszkal Bolton)" ("Warrant Damages").

Mr. Lenaburg later filed an amended proof of claim, reducing the stated amount of the claim to $2,652,774 plus an "unknown" value for item (5), Warrant Damages. Proof of claim 7-2, Case No. 18-23071. The amounts shown for items (1) through (4) were not changed.

4

**ARGUMENTS OF THE PARTIES**

In its motions for partial summary judgment, the Debtor seeks a ruling that Mr. Lenaburg's claims for Future Base Pay and Future Bonuses are subject to the cap provided in section[2] 502(b)(7). The Debtor seeks summary judgment on Count II of the Complaint and on Count I of the Counterclaim. As Count I of the Counterclaim also addresses claims for Back Pay and Deferred Compensation, any such relief would be partial.

Mr. Lenaburg argues that the cap does not apply to his Future Base Pay claim as section 502(b)(7) applies only to key executives and there is a factual dispute as to whether he was a key executive. He argues that the cap does not apply to his claim for Future Bonuses as he claims they are vested. It appears that Mr. Lenaburg believes the discretionary annual bonuses for the years following his termination were already earned or were the equivalent of deferred compensation.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

---

[2] The word "section" or "sections" as used in this Order refers to the cited section or sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1577 (citing *Anderson*, 477 U.S. at 252).

At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

## SECTION 502(b)(7) DAMAGES CAP

Section 502(b)(7) provides that a "claim of an employee for damages resulting from the termination of an employment contract" is limited to (A) "the compensation provided by such contract, without acceleration, for one year" following the earlier of the petition date or the date of termination, plus (B) any unpaid compensation due under the contract.

## ANALYSIS

Mr. Lenaburg was an employee of the Debtor with an employment contract.  He was terminated by the Debtor.  His claim for damages resulting from his termination includes claims for Future Base Pay and Future Bonuses.  These amounts are for periods that followed Mr. Lenaburg's termination and would have been payable to him under his contract had he remained employed with the Debtor.  Mr. Lenaburg's claim for Future Base Pay and Future Bonuses is a classic damages claim.

Mr. Lenaburg argues that the cap provided under section 502(b)(7) applies only to "key executives." He argues that whether he was a key executive of the Debtor is a dispute of material fact, and so the motions for partial summary judgment must be denied as to his Future Base Pay claim.

Section 502(b)(7) applies to the claim of any employee arising from termination of an employment contract. While it is true that most employees whose claims are capped are executives, this is only because it is unusual for rank and file employees to have employment contracts that would implicate this provision. There is nothing in the statute to suggest that any particular class of employee is covered and others are not.

The only case law cited by Mr. Lenaburg does not support his argument. While the court in *In re Cincinnati Cordage & Paper Co.*, 271 B.R. 264, 269 (Bankr. S.D. Ohio 2001), stated that this provision "was designed to limit the claims of key executives who had been able to negotiate contracts with very beneficial terms," it did not rule that the statute applies only to key executives as Mr. Lenaburg argues.

Mr. Lenaburg's argument regarding his Future Bonuses claim makes even less sense. He states that "all or a portion of this should be considered vested and not subject to the cap as it was earned and vested Creditor deferring compensation [sic]" and that all or a portion of it "is based upon deferred compensation." The Employment Agreement and Employment Agreement Extension do not support that contention. To the contrary, the entirety of Mr. Lenaburg's Future Bonuses claim is based on his claimed rights to discretionary annual bonuses, under Section 3.2(a) of the Employment Agreement, for periods following his termination. To the extent he has any right to such bonuses, that right was not earned at the time of his termination. It was neither deferred compensation nor vested in any way.

The statute and case law provide no support for Mr. Lenaburg's arguments, nor do the contracts themselves. Section 502(b)(7) applies to Mr. Lenaburg's Future Base Pay and Future Bonuses claims.

Next, the Court must determine the dollar amount of the cap under section 502(b)(7). For the Future Base Pay and Future Bonuses claims, Mr. Lenaburg is entitled to a claim equal to his

compensation under the Employment Agreement Extension, without acceleration, for the one-year period following the earlier of the bankruptcy petition date or his termination. Because his termination date was earlier than the petition date, the period is measured from then.

Mr. Lenaburg is entitled to his base salary for the one-year period measured from his termination on June 15, 2018. That one-year period spans two annual salary periods under Mr. Lenaburg's employment agreement. Assuming the Employment Agreement Extension is valid and enforceable, as the parties have asked the Court to do for purposes of these motions, Mr. Lenaburg's annual salary was $275,000 for the fifth year of his contract, from April 25, 2018 through April 24, 2019, and was $302,500 for the sixth year of his contract, from April 25, 2019 through April 24, 2020, in each case applying a 10% annual increase. Applying these annual salaries to the one-year period following his termination, assuming 365 days per year, Mr. Lenaburg would be entitled to $753.42 per day for the period June 16, 2018 through April 24, 2019, and $828.77 per day for the period April 25, 2019 through June 15, 2019. His claim for Future Base Salary would be capped at $278,916.50 [(313 days X $753.42) + (52 days X $828.77) = $278,916.50].

The next question is whether Mr. Lenaburg had any other right to payment under the Employment Agreement Extension that should be included in calculating the cap. It might be argued that his claim may include a discretionary annual bonus under Section 3.2(a) of the Employment Agreement.

Elsewhere, in documents filed separate from the present motions, Mr. Lenaburg argues that the bonus addressed in Section 3.2(a) of the Employment Agreement is discretionary only with regard to the amount of the bonus, meaning whether it would be 20% of base compensation or 70% of base compensation or some amount in between. He claims that the Debtor did not have discretion to pay him no annual bonus at all. But the text of the Employment Agreement, as a whole, does not support this view.

Subsection (b) of section 3.2, as originally applicable, guaranteed Mr. Lenaburg a quarterly bonus, a minimum of $5,000, conditioned only on him performing a central part of his job, making timely filings with the SEC.  In contrast, there is nothing guaranteed about the bonus addressed in subsection (a) of the same provision.  First, Mr. Lenaburg's performance goal for any such bonus would be "based on a mutually agreed to plan approved by the Compensation Committee."  This requires two steps – the Debtor and Mr. Lenaburg agreeing to a plan and then the compensation committee approving that plan.  The Debtor would not be required to agree on, nor the compensation committee required to approve, whatever plan Mr. Lenaburg thought appropriate. Even if one assumes that the Debtor must be reasonable in negotiating a plan with Mr. Lenaburg, there is no guaranty that the agreed-upon target would be attained.

The text of the employment agreements does not support the view that the Debtor's discretion under section 3.2(a) is limited to assigning the bonus amount along the range of 20% of base salary to 70% of base salary.  First, the use and placement of the word "discretionary" indicates that the entire bonus provided under subsection (a) is at the discretion of the Debtor.  The word "discretionary" modifies the phrase "target incentive compensation," meaning that the bonus itself, and not just the amount, is discretionary.  This interpretation is reinforced when viewed in contrast with subsection (b), which provides for a non-discretionary bonus based on specified conditions.  Second, the word "discretionary" is not required to give the provision the meaning Mr. Lenaburg proposes.  If "discretionary" is removed from subsection (a), the text would then support Mr. Lenaburg's view.  But the Court must give meaning to all the terms of a contract.  The word "discretionary" has meaning only if it is applied to the entirety of the annual bonus, meaning that the Debtor has discretion whether to award it at all.

Mr. Lenaburg has no right to payment of a bonus under the fully discretionary provisions of Section 3.2(a) of the Employment Agreement.  That bonus provision should not be taken into account

in calculating the cap under section 502(b)(7). Mr. Lenaburg's claims for Future Base Pay and Future Bonuses are limited, in the aggregate, to $278,916.50.

## CONCLUSION

The Debtor's motions for partial summary judgment will be granted. Under Count II of the complaint and Count I of the counterclaim, the Court will disallow Mr. Lenaburg's Future Base Pay and Future Bonuses claims, together, to the extent they exceed $278,916.50.

The Court's ruling here has no impact on Mr. Lenaburg's claims for Back Pay or Deferred Compensation. Because Mr. Lenaburg's claim for Warrant Damages arises from the Debtor's separate cancellation of all employee issued warrants not specifically approved by the board, and thus is not presented as damages resulting from termination, it also is not affected by this ruling.

## ORDER

For the foregoing reasons, the Court ORDERS AND ADJUDGES as follows:

1. The *Plaintiff's Motion for Partial Summary Judgment* [ECF No. 12; Adv. Proc. No. 18-01451] and the *Debtor's Motion for Partial Summary Judgment on Objection to Claim No. 7 Filed by Dennis Lenaburg* [ECF No. 80, Case No. 18-23071] are GRANTED.

2. The claims of Dennis Lenaburg, presented in proof of claim no. 7, for "Base compensation for the period of June 15, 2018 through the expiration date of April 24, 2023" and "Bonus compensation," are limited, in the aggregate, to the sum of $278,916.50.

3. After trial, the Court will rule in favor of the Debtor on Count II of the complaint and on the relevant portion of Count I of the counterclaim, and will rule in favor of the Debtor on the same components of Mr. Lenaburg's claim as addressed in the objection to claim [ECF No. 79]. The Court will not consider these issues at trial.

4.      The Court will proceed to trial on all other disputes presented in the above-captioned adversary proceeding and the objection to claim.

###

Copies Furnished To:
Nathan G. Mancuso, Esq.

*Nathan G. Mancuso, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and to file a certificate of service with the court.*